# State of New York
# Court of Appeals

MEMORANDUM

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 97  SSM 14
The People &c.,
      Respondent,
     v.
Jose L. Bisono,
      Appellant.
-------------------------
No. 98  SSM 15
The People &c.,
      Respondent,
     v.
Trevis D. Baker,
      Appellant.
-------------------------
No. 99  SSM 16
The People &c.,
      Respondent,
     v.
Jeffrey R. Magee,
      Appellant.
-------------------------
No. 100  SSM 17
The People &c.,
      Respondent,
     v.
Joshua L. Miller,
      Appellant.
-------------------------
No. 106  SSM 18
The People &c.,
      Respondent,
     v.
Todd Daniels,
      Appellant.
-------------------------

No. 101  SSM 19
The People &c.,
        Respondent,
        v.
Zestra Hardin,
        Appellant.
------------------------
No. 102  SSM 20
The People &c.,
        Respondent,
        v.
Nolis Ogando,
        Appellant.
------------------------
No. 103  SSM 21
The People &c.,
        Respondent,
        v.
Joshua D. Biaselli,
        Appellant.
------------------------
No. 104  SSM 22
The People &c.,
        Respondent,
        v.
Isaias Torres,
        Appellant.
------------------------
No. 105  SSM 28
The People &c.,
        Respondent,
        v.
Lance Rodriguez,
        Appellant.


SSM No. 14:
Submitted by A. Alexander Donn, for appellant.
Submitted by Christopher Blia-Koessler, for respondent.

SSM No. 15:
Submitted by James M. Specyal, for appellant.
Submitted by Susan M. Howard, for respondent.

SSM No. 16:
Submitted by James M. Specyal, for appellant.
Submitted by Joseph V. Cardone, for respondent.

SSM No. 17:
Submitted by Kaixi Xu, for appellant.
Submitted by Susan M. Howard, for respondent.

SSM No. 18:
Submitted by Benjamin Welikson, for appellant.
Submitted by Denise Pavlides, for respondent.

SSM No. 19:
Submitted by Simon Greenberg, for appellant.
Submitted by Danielle S. Fenn, for respondent.

SSM No. 20:
Submitted by Alice R. B. Cullina, for appellant.
Submitted by Danielle S. Fenn, for respondent.
New York State Defenders Association, et al., amici curiae.

SSM No. 21:
Submitted by Allyson Kehl-Wierzbowski, for appellant.
Respondent, precluded.

SSM No. 22:
Submitted by Dalourny Nemorin, for appellant.
Submitted by William H. Branigan, for respondent.

SSM No. 28:
Submitted by Sean Nuttall, for appellant.
Submitted by Rachel N. Houle, for respondent.
New York State Association of Criminal Defense Lawyers, et al., amici curiae

MEMORANDUM:

In each appeal, the order of the Appellate Division should be reversed and the case remitted to that court for further proceedings in accordance with this memorandum.

- 1 -

The waivers of the right to appeal were invalid and unenforceable pursuant to our analysis in *People v Thomas* (34 NY3d 545 [2019]). It is well-settled that "a waiver of the right to appeal is not an absolute bar to the taking of a first-tier direct appeal" (*id.*, at 558, citing *People v Seaberg*, 74 NY2d 1, 11 [1989]; *People v Callahan*, 80 NY2d 273, 280 [1992]; *People v Hansen*, 95 NY2d 227, 230-231 [2000]). Nonetheless, in each case, among other infirmities, the rights encompassed by an appeal waiver were mischaracterized during the oral colloquy and in written forms executed by defendants, which indicated the waiver was an absolute bar to direct appeal, failed to signal that any issues survived the waiver and, in the Queens and Orleans Counties cases, advised that the waiver encompassed "collateral relief on certain nonwaivable issues in both state and federal courts" (*Thomas*, 34 NY3d at 566), containing language similar to the waivers invalidated in the *Thomas* companion cases, *Lang* and *Green*. Viewing these deficiencies in the context of the record in each case and considering the totality of the circumstances, including in several cases defendants' significant mental health issues (*see People v Bradshaw*, 18 NY3d 257, 262, 273 [2011]), we cannot say that "defendants comprehended the nature [and consequences] of the waiver of appellate rights" (*Thomas*, at 565-566, quoting *People v Lopez*, 6 NY3d 248, 256-257 [2006]).* Accordingly, we reverse and

---

* In *Daniels*, we disagree with the dissent's opinion that the oral colloquy "compares favorably" to that in *People v Ramos* (7 NY3d 737 [2006]) or that the court "acknowledged" that an unlawful sentence claim could be appealed (J. Garcia partially dissenting op at 10). While the written waiver contained no affirmative misstatements, the form cannot be viewed in isolation but is only one component to be considered in the totality of the circumstances, which, in this case, also included – not merely ambiguous statements or shorthand pronouncements – but clearly inaccurate advisements concerning

remit to the Appellate Division for consideration of issues raised but not decided on the appeal to that court due to the enforcement of defendants' appeal waivers.

In *People v Torres* and *People v Biaselli*, defendants' challenges to the Appellate Division's resolution of other issues (relating to an order of protection and a sentencing promise, respectively), which are not preserved, are beyond further review by this Court.

---

(among other things) a purported waiver of the right to counsel and a vulnerable defendant with a serious mental health condition. It is the partial dissent that appears to have eschewed an "individual assessment of the voluntariness of . . . defendant's waiver" (J. Garcia partially dissenting op at 2) by analyzing each component in a vacuum. While we express no view concerning whether our precedent was properly applied in the litany of Appellate Division cases cited by our colleague (which are not before us), even a cursory review of the landscape reveals that, in the wake of *Thomas*, the Appellate Division is upholding some appeal waivers and deeming others unenforceable based on the totality of the circumstances, an approach we reaffirmed in *Thomas* and follow in these cases.

GARCIA, J. (dissenting in *People v Daniels* and otherwise concurring in result):

In each of the ten cases under review here, the Appellate Division upheld the validity of the defendant's waiver of the right to appeal. Today, we reverse all ten of those decisions. The rules changed. As the majority decision makes clear, the waivers in these

- 1 -

cases are now "invalid and unenforceable pursuant to our analysis in *People v Thomas* (34 NY3d 545 [2019])" (majority op at 2).  *Thomas* did indeed drastically change New York's approach to appeal waivers, for the most part making any individual assessment of the voluntariness of each defendant's waiver irrelevant.  While I continue to disagree with the majority's reasoning in *Thomas*, I agree that it controls here in nine of the cases and, in those nine, I concur in result.  In the tenth case, *People v Daniels*, the majority goes beyond what even *Thomas* requires, essentially closing off one of the few remaining avenues for appellate courts to uphold voluntary waivers of the right to appeal.  In *Daniels*, therefore, I dissent.

I.

In *People v Thomas*, this Court wrote reassuringly that "[o]ur primary task is to determine whether, under the circumstances of each case, the mischaracterizations impacted the knowing and voluntary nature of the three appeal waivers" at issue (34 NY3d at 552).  We maintained that we were simply "[a]dhering to our well-established precedent in reviewing the validity of appeal waivers" in upholding the waiver in one case and holding the waivers invalid in the other two (*id.*).[1]  In dissent, I expressed concern that we were abandoning our "sensible standard" for evaluating appeal waivers and substituting an approach that "examines whether the trial court's description of the waiver was 'improper'

---

[1] Both convictions were affirmed after remittal to the Appellate Division (*see People v Lang*, 178 AD3d 1362, 1363 [4th Dept 2019] [holding that the defendant's contention that he was improperly denied youthful offender status was unpreserved and, in any event, without merit]; *People v Green*, 178 AD3d 1354, 1355 [4th Dept 2019] [holding that the defendant's sentence was not unduly harsh or severe]).

or somehow 'irredeemable under the circumstances'" (*id.* at 573 [Garcia, J., dissenting]). I anticipated that "[a]ny waiver resembling those in *Green* and *Lang* [would be] prone to attack" (*id.* at 585; *see* majority op at 2 [waivers rejected in the ten cases here "contain( ) language similar to the waivers invalidated in the *Thomas* companion cases, *Lang* and *Green*"]).  This, in turn, would unravel defendants' bargains, undermine the finality of their convictions, and enlarge the case load of our already burdened appellate courts (*Thomas*, 34 NY3d at 585-586 [Garcia, J., dissenting]).  *Thomas* has taken the predictable toll.

II.

In the year since the case was decided, appellate courts in New York, citing *Thomas*, have invalidated 90 appeal waivers.[2]

It is clear to the Appellate Division Departments that the rules have changed:

> "We have previously held that an overbroad appeal waiver would remain knowing, intelligent and voluntary, but that any nonwaivable rights would be 'excluded from [its] scope' (*People v Gruber*, 108 AD3d 877, 878 [2013], *lv denied* 22 NY3d 956 [2013]; *see People v Norton*, 9 AD3d 741, 742 [2004]; *People v Wagoner*, 6 AD3d 985, 986 [2004]; *People v Umber*, 2 AD3d 1051, 1052 [2003], *lv denied* 2 NY3d 747 [2004]).  The Court of Appeals has recently advised, however, that an appeal waiver is not 'knowingly or voluntarily made in the face of erroneous advisements warning of absolute bars to the pursuit of all potential remedies, including those affording collateral relief on certain nonwaivable issues in both state and federal courts' (*People v Thomas*, 34 NY3d 545, 566 [2019]). Accordingly, we are constrained to hold that defendant's appeal waivers are invalid given the confusion as to their impact" (*People v Barrales*, 179 AD3d 1313, 1314-1315 [3d Dept 2020]).

---

[2] Citations to those cases are set forth in an Appendix to this writing.

In another example, the Appellate Division, having previously upheld an appeal waiver, vacated that order after *Thomas* was decided, and instead held that same appeal waiver invalid because the trial court "mischaracterized the appellate rights waived as encompassing an absolute bar to the taking of a direct appeal, and failed to inform the defendant that appellate review remained available for certain issues" (*People v Robinson*, — AD3d —, —, 2020 NY Slip Op 07227, *1 [2d Dept 2020], *vacating* 184 AD3d 779 [2d Dept 2020]).

The effect can also be seen in the general approach taken by appellate courts in finding waivers invalid. Rather than engage in an assessment of the voluntariness of the individual waiver, courts attempt to apply the "checklist of errors" identified in *Thomas*. Unfortunately, other than identifying "errors," that case offers no guidance as to how to assess those misstatements in determining whether the waiver is somehow "irredeemable" (*see Thomas*, 34 NY3d at 584 [Garcia, J., dissenting] [noting that the majority holding "leaves lower courts with an unfamiliar and undefined new framework"]). The list includes statements that "defendants' waivers would (1) operate as 'an absolute bar to the taking of a direct appeal,' (2) result in a 'loss of attendant rights to counsel and poor person relief,' and (3) impact defendants' 'postconviction relief separate from the direct appeal'" (*id*. at 577, quoting *id.* at 565 [majority opinion]).

Appellate courts, without further guidance as to how to weigh these "misstatements," have in many cases identified a single—now fatal—flaw in the waiver process with only a passing reference to our decision in *Thomas*. For example, in *People*

*v Dixon* (184 AD3d 854, 855 [2d Dept 2020], *lv denied* 35 NY3d 1065 [2020]), the court

noted that, "[w]hen explaining the waiver of the right to appeal, the Supreme Court stated

to the defendant, '[s]o what this means is you're not going to have any help or any lawyer

to help you effect an appeal on the conviction or any lawful sentence that I impose . . .

[and] [n]obody is going to provide you with transcripts or any other help'" (*id.*).   In

invalidating the waiver, the court held that "[t]hese statements 'utterly mischaracterized

the nature of the right a defendant was being asked to cede'" (*id.*, quoting *Thomas*, 34

NY3d at 565 [internal quotation marks omitted]; *see also People v Brown*, 180 AD3d 1341,

1341 [4th Dept 2020] [finding the waiver "irredeemable" under *Thomas* because "the court

erroneously informed defendant that, by waiving the right to appeal, he could obtain no

further review of the conviction or sentence by a higher court—crucially omitting any

mention of the several rights that survive the waiver of the right to appeal"], *lv denied* 35

NY3d 968 [2020]; *People v Sealey*, 187 AD3d 1067, 1067 [2d Dept 2020] ["The

defendant's purported waiver of his right to appeal was invalid because the County Court's

oral colloquy mischaracterized the appellate rights waived as encompassing a bar to filing

an appellate brief and the loss of attendant rights to counsel and poor person relief"]; *People*

*v Walder*, 186 AD3d 1272, 1272 [4th Dept 2020] ["The defendant's purported waiver of

his right to appeal was invalid because the County Court's colloquy mischaracterized the

appellate rights waived as encompassing a bar to filing an appellate brief and the loss of

attendant rights to counsel and poor person relief"]; *Robinson*, — AD3d at —, 2020 NY

Slip Op 07227, *1 [similar]; *People v Thomas*, — AD3d —, —, 2020 NY Slip op 07230,

*1 [2d Dept 2020] [similar]; *People v Pellew*, 187 AD3d 1060, 1060 [2d Dept 2020] [similar]; *People v Leiva*, 184 AD3d 731, 731 [2d Dept 2020] [similar], *lv denied* 35 NY3d 1067 [2020]; *People v Baptiste*, 181 AD3d 696, 696 [2d Dept 2020] [similar], *lv denied* 35 NY3d 1092 [2020]; *People v Suarez-Montoya*, 183 AD3d 765, 765 [2d Dept 2020] ["The defendant's waiver of the right to appeal was invalid, because the Supreme Court incorrectly stated during the discussion of the appeal waiver that the waiver encompassed post-conviction motions"]).  In addition to these 90 cases, in another 20 cases, although the waiver was "upheld," the court nevertheless went on to consider the merits of the appeal—negating any benefit of the waiver (*see e.g. People v Sylvester*, 187 AD3d 522, 525 [1st Dept 2020], *lv denied* 35 NY 3d 1044 [2020]; *People v Edey*, 183 AD3d 430, 430 [1st Dept 2020]; *People v Scott*, 180 AD3d 1345, 1345 [4th Dept 2020], *lv denied* 35 NY3d 995 [2020]).

In the majority of these cases, the defendant's sole claim was that the bargained-for sentence was unduly harsh (*see e.g. Brown*, 180 AD3d at 1341; *Sealey*, 187 AD3d at 1067; *Robinson*, — AD3d at —, 2020 NY Slip Op 07227, *1; *Pellew*, 187 AD3d at 1060; *Leiva*, 184 AD3d at 713; *Baptiste*, 181 AD3d at 696; *Suarez-Montoya*, 183 AD3d at 765; *Scott*, 180 AD3d at 1345).  However, substantive issues, such as suppression, have also survived purported waiver (*see e.g. People v Chy*, 184 AD3d 664, 666-667 [2d Dept 2020] [invalidating waiver, granting suppression, and vacating plea]; *People v Weeks*, 182 AD3d 539, 540-542 [2d Dept 2020] [same]).

This account of the fallout from *Thomas* is not meant as criticism: Routine invalidation of plea waivers is unavoidable given the lack of any workable analytical framework.

III.

Here, too, *Thomas* compels us to summarily invalidate nine appeal waivers and remit for consideration of the merits by the Appellate Division. As with the scores of cases reversed by appellate courts, we do so with a nod to *Thomas* and a cite to mischaracterizations in the defendants' waivers. The cases are representative of the practical considerations abandoned by *Thomas*.

In eight out of the nine cases, the defendant seeks to challenge his sentence as excessive (*see People v Bisono*; *People v Baker*; *People v Magee*; *People v Miller*; *People v Hardin*; *People v Ogando*, *People v Biaselli*; *People v Torres*). In all eight of these cases, the defendant's written waiver included the right to challenge the sentence imposed—in six of the eight, the oral colloquy reinforced this specific waiver (*see Thomas*, 34 NY3d at 583 [Garcia, J., dissenting] [pointing out that defendant Green's specific acknowledgment of his waiver of right to raise excessive sentence issue on appeal was not enough to prevent reversal and remand to Appellate Division for consideration of whether sentence was excessive]; *see also Barrales*, 179 AD3d at 1314). The record in each case demonstrates that the defendant had the opportunity to discuss the waiver with counsel, and each defendant acknowledged his understanding of the waiver of the appeal right. Each defendant received a sentence substantially less than the maximum he faced based on the

charges (*see e.g. People v Ogando* [defendant, who was charged with second-degree murder, first-degree manslaughter, and first-degree gang assault, and faced a maximum sentence of life in prison without the possibility of parole, pleaded guilty to first-degree gang assault and seeks to challenge, among other things, the bargained-for sentence of eight years' imprisonment]; *People v Hardin* [defendant, who was charged with second-degree burglary and faced a maximum sentence of fifteen years' imprisonment, pleaded guilty to attempted second-degree burglary and seeks to challenge the bargained-for sentence of two years' imprisonment]; *see generally People v Callahan*, 80 NY2d 273, 280 [1992] [noting that "relevant factors" in assessing an appeal waiver include "the nature . . . of the agreement" and "the reasonableness of the bargain"]).  Several defendants had extensive criminal histories (*see e.g. People v Baker* [second felony offender]; *People v Magee* [same]; *People v Hardin* [46 prior misdemeanor convictions in New York State]; *see generally People v Sanders*, 25 NY3d 337, 342 [2015] [considering the defendant's background, including his "extensive experience with the criminal justice system," in assessing voluntariness of appeal waiver]).  Yet each waiver is deemed—for all purposes— invalid given the failure to specifically cure some unexplained combination of "infirmities" (*see* majority op at 2).  Any lingering doubt that *Thomas* worked a sea change in our approach to appeal waivers has been dispelled.

IV.

Reinforcing the routine invalidation of appeal waivers that must necessarily result from our decision in *Thomas* is damaging enough.  To make matters worse, the majority's

reversal in *People v Daniels* expands *Thomas*'s scope, making crystal clear that a single error may be fatal to an appeal waiver regardless of the other circumstances demonstrating its voluntariness. It also casts further doubt on the continuing validity of this court's pre-*Thomas* waiver precedent, particularly *People v Ramos* (7 NY3d 373 [2006]). Accordingly, I dissent and would affirm in *Daniels*.

Defendant Daniels was charged with one count of first-degree assault (class B felony), one count of first-degree reckless endangerment (class D felony), one count of first-degree criminal use of a firearm (class B felony), and three counts of second-degree criminal possession of a weapon (class C felony), and faced a maximum prison sentence of 25 years. He pleaded guilty to second-degree criminal possession of a weapon (class C felony) and executed a written and oral appeal waiver, in exchange for which he received the bargained-for prison sentence of five years. He had two prior convictions, including one felony conviction. Although he had a history of mental health problems, defendant and his counsel assured the court that he was lucid and understood the proceedings. It also appears that defendant submitted a memorandum to the court, prepared by a psychotherapist prior to his guilty plea, that found he was lucid, coherent, and compliant with his medications.

During the oral colloquy, the court informed defendant that he was being asked to "waive [his] right to appeal this judgment of conviction, and any lawful sentence I impose thereon" in order to "induce the District Attorney to reduce the severity of the charges." The court explained that waiving the right to appeal "means [that] nobody is going to

provide you with an attorney, transcripts, any help whatsoever to appeal the sentence, or this conviction." Defendant agreed that he understood the court's explanation and confirmed that he understood "the rights [he was] waiving." He also signed and executed a written waiver, which he "read . . . over and discussed with [his] lawyer" and "signed in open court on advice of counsel." That written waiver provided:

> "I have been advised of my right to appeal. I understand that after a conviction by a guilty plea, a defendant has the right to appeal and have the proceedings reviewed by an appellate court. I understand that the right to appeal includes the right to have an attorney appointed, if I cannot afford one, and the right to submit a brief and argue before an appellate court issues relating to my sentence and conviction. I understand that pleading guilty does not waive the right to appeal, which is separate and distinct from my rights to trial, but that the waiver of the right to appeal is a condition of this particular plea agreement and I understand that my conviction and sentence will be final."

On appeal, defendant seeks to challenge the excessiveness of his sentence.

The oral colloquy here compares favorably with that in *Ramos*. In *Ramos*, the court stated that defendant was "giving up any and all rights to appeal this conviction and sentence; in other words, this is now final." The court further stated that "[o]nce you agree to do this, not only will there not be any trial but there won't be any appeals; do you understand that this is final?" (*People v Bradshaw*, 18 NY3d 257, 269-270 [2011, Read, J., dissenting] [quoting the *Ramos* colloquy]). While the language in the *Ramos* colloquy unequivocally indicates an absolute bar to appellate review, the colloquy at issue here acknowledged that an unlawful sentence may be appealed. Although the court overstated the loss of the right to counsel and poor person relief, the court, unlike in *Ramos*, elicited

defense counsel's "professional opinion" that his client's waiver was "knowing, intelligent and voluntary," and confirmed that defendant "underst[ood] the rights [he was] waiving" (*see Thomas*, 34 NY3d at 564 ["The court's oral colloquy, specifically its inquiry of Thomas and resulting assurances that he had ample opportunity to discuss with counsel the meaning of the waiver and appellate rights he was surrendering, was sufficient to support a knowing and voluntary waiver under the totality of the circumstances"]).

In *Ramos*, we held that, "[e]ven if there were any ambiguity in the sentencing court's colloquy," the waiver of the right to appeal was valid because "defendant executed a detailed written waiver . . . stat[ing] that defendant had the right to appeal, explain[ing] the appellate process and confirm[ing] that defense counsel fully advised him of the right to take an appeal under the laws of the State of New York" (7 NY3d at 738). Apart from confirming that defense counsel advised defendant of the right to appeal—which the court here orally confirmed—the waiver in *Daniels* is substantially similar to the one that the *Ramos* Court held was sufficient to cure any ambiguities in the oral colloquy.[3] Specifically, the written waiver in *Ramos* stated:

---

[3] Not only is the written waiver language here similar to *Ramos*, but its description of the right to appeal also tracks a portion of the Model Colloquy, the use of which we expressly endorsed in *Thomas*. The version of the Model Colloquy commended in *Thomas* provides:

> "'An appeal is a proceeding before a higher court, an appellate court. If a defendant cannot afford the costs of an appeal or of a lawyer, the state will bear those costs. On an appeal, a defendant may, normally through his/her lawyer, argue that an error took place in this court which requires a modification or reversal of the conviction. A reversal would require either new proceedings in this court or a dismissal' and provides that the court should instruct the defendant that, 'as a condition of the

"I hereby waive my right to appeal. I execute this waiver after being advised by the court and my attorney of the nature of the rights I am giving up. I have been advised of my right to take an appeal (CPL 450.10), to prosecute the appeal as a poor person and to have an attorney assigned in the event that I am indigent, and to submit a brief and/or argue before an appellate court on any issues relating to my conviction and sentence. I make this waiver voluntarily, knowingly and of my own free will" (*Bradshaw*, 18 NY3d at 270 [2011, Read, J., dissenting] [quoting the *Ramos* written waiver]).

The *Ramos* waiver and Model Colloquy, like the written waiver here, all define the right to appeal in a similar manner, and explain the distinctness of the appeal right from the right to a trial (*see People v Lopez*, 6 NY3d 248, 256 [2006]; NY Model Colloquies, Waiver of Right to Appeal). The present waiver does not contain any affirmative misstatements. Although it does not detail the rights that survive the appeal waiver, we have never required a written waiver to do so (*see Thomas*, 34 NY3d at 558 n 1 ["courts need 'not include a specific enumeration of each of the rights being waived' for a guilty plea" and there is no reason "for holding the enforceability of waivers of the statutory right to appeal to a standard more stringent"]; *see also Ramos*, 7 NY3d at 738).

The record here contains a single mischaracterization of the appeal right, namely the implication in the oral colloquy that defendant was losing the attendant right to appellate counsel—an error that was not repeated in the written waiver. This single misstatement does not rise to the level of the "utter mischaracterizations" of the appeal

---

plea agreement, [the defendant is being] asked to waive [the] right to appeal'" (34 NY3d at 567 n 7).

right that resulted in reversals in *Lang* and *Green*, which involved multiple misstatements in the oral colloquy that were repeated in the written waivers (*see Thomas*, 34 NY3d at 565). On the contrary, here, the written waiver explained the distinct appeal right. Moreover, the oral colloquy implied that some rights, including the right to challenge an illegal sentence, were not waived, and the court assured that defendant was explained his right to appeal, understood that right, and was voluntarily waiving that right. The record further reflects that the plea deal that defendant received was extremely favorable and defendant had substantial prior experience with the criminal justice system—both "relevant factors surrounding the waiver" bearing on "the experience and background of the accused" (*Sanders*, 25 NY3d at 341; *see Thomas*, 34 NY3d at 563 ["Our requisite analysis for determining the validity of the waiver remains focused on whether all the relevant circumstances reveal a knowing and voluntary waiver"]). All of these circumstances, considered together, demonstrate that defendant's waiver was knowingly, voluntarily, and intelligently made (*see Ramos*, 7 NY3d at 738 [waiver valid where the "defendant's written waiver stated that defendant had the right to appeal, explained the appellate process and confirmed that defense counsel fully advised him of the right to take an appeal"]). Nevertheless, along with the nine other waivers, the majority finds the waiver in *Daniels* irredeemable, making clear that one misstatement from the checklist invalidates a voluntary waiver.

V.

Each of the waivers in the ten cases we consider today was upheld by the Appellate Division prior to our decision in *Thomas*. We reverse in all of them. Each of those ten defendants may now make substantive arguments to the Appellate Division, including that the bargained-for sentence is "unduly harsh," while retaining the benefit of a plea to significantly reduced charges. Routine invalidation of appeal waivers will find not only renewed, but increased support from today's majority decision, and will continue until trial courts fully adopt the appropriate catechism, namely the Model Colloquy (*see Thomas*, 34 NY3d at 567; *see also People v Cipolla*, 186 AD3d 1136, 1136 [4th Dept 2020] [noting that the "better practice" would be for the court to use the Model Colloquy]; *People v Somers*, 186 AD3d 1111, 1112 [4th Dept 2020] [same]). The repercussions for an already overburdened appellate docket are self-evident.

**Appendix**[1]

1. *People v Soler*, — AD3d —, 2020 NY Slip Op 07404 (2d Dept 2020)

2. *People v Robinson*, — AD3d —, 2020 NY Slip Op 07227 (2d Dept 2020), *vacating* 184 AD3d 779 (2d Dept 2020)

3. *People v Guevara-Lopez*, — AD3d —, 2020 NY Slip Op 07221 (2d Dept 2020)

4. *People v Garcia*, — AD3d —, 2020 NY Slip Op 07220 (2d Dept 2020)

5. *People v Perrella*, — AD3d —, 2020 NY Slip Op 07099 (2d Dept 2020)

6. *People v Davis*, — AD3d —, 2020 NY Slip Op 06896 (4th Dept 2020)

7. *People v Jones*, — AD3d —, 2020 NY Slip Op 06661 (4th Dept 2020)

8. *People v Douglas*, — AD3d —, 2020 NY Slip Op 06642 (4th Dept 2020)

9. *People v Murphy*, — AD3d —, 2020 NY Slip Op 06640 (4th Dept 2020)

10. *People v Hunt*, — AD3d —, 2020 NY Slip Op 06623 (4th Dept 2020)

11. *People v Fishbein*, — AD3d —, 2020 NY Slip Op 06544 (2d Dept 2020)

12. *People v Daniel*, — AD3d —, 2020 NY Slip Op 06542 (2d Dept 2020)

13. *People v Gaindarpersaud*, — AD3d —, 2020 NY Slip Op 06285 (2d Dept 2020)

14. *People v Brooks*, 187 AD3d 1587 (4th Dept 2020)

15. *People v Harlee*, 187 AD3d 1586 (4th Dept 2020)

16. *People v Vargas*, 187 AD3d 1222 (2d Dept 2020)

17. *People v Underwood*, 187 AD3d 1221 (2d Dept 2020)

18. *People v Platel*, 187 AD3d 1216 (2d Dept 2020)

19. *People v Adyl K.*, 187 AD3d 1208 (2d Dept 2020)

20. *People v Harris*, 187 AD3d 1207 (2d Dept 2020)

21. *People v Gudanowski*, 187 AD3d 1205 (2d Dept 2020)

22. *People v Wallace*, 187 AD3d 1071 (2d Dept 2020)

23. *People v Thomas*, 187 AD3d 1069 (2d Dept 2020)

24. *People v Sealey*, 187 AD3d 1067 (2d Dept 2020)

25. *People v Pellew*, 187 AD3d 1060 (2d Dept 2020)

26. *People v Long*, 187 AD3d 1055 (2d Dept 2020)

---

[1] As of December 9, 2020.

27.  *People v Joseph*, 187 AD3d 1050 (2d Dept 2020)

28.  *People v Gonzalez*, 186 AD3d 1832 (3d Dept 2020)

29.  *People v Reynolds*, 186 AD3d 1535 (2d Dept 2020)

30.  *People v Walder*, 186 AD3d 1272 (2d Dept 2020)

31.  *People v Eduardo S.*, 186 AD3d 1265 (2d Dept 2020)

32.  *People v Cipolla*, 186 AD3d 1136 (4th Dept 2020)

33.  *People v Williams*, 186 AD3d 1112 (4th Dept 2020)

34.  *People v Somers*, 186 AD3d 1111 (4th Dept 2020)

35.  *People v Shantz*, 186 AD3d 1076 (4th Dept 2020)

36.  *People v Wasyl*, 186 AD3d 1071 (4th Dept 2020)

37.  *People v Jones*, 186 AD3d 1069 (4th Dept 2020)

38.  *People v Habersham*, 186 AD3d 854 (2d Dept 2020), *lv denied* 35 NY3d 1113 (2020)

39.  *People v Cobian*, 186 AD3d 851 (2d Dept 2020)

40.  *People v Jeremiah*, 186 AD3d 740 (2d Dept 2020), *lv denied* 35 NY3d 1113 (2020)

41.  *People v McMillian*, 185 AD3d 1420 (4th Dept 2020), *lv denied* 35 NY3d 1096 (2020)

42.  *People v Jeffords*, 185 AD3d 1417 (4th Dept 2020), *lv denied* 35 NY3d 1095 (2020)

43.  *People v Raghnal*, 185 AD3d 1411 (4th Dept 2020), *lv denied* 35 NY3d 1115 (2020)

44.  *People v Mitchell*, 185 AD3d 1410 (4th Dept 2020)

45.  *People v Tomko*, 185 AD3d 1356 (3d Dept 2020), *lv denied* 35 NY3d 1116 (2020)

46.  *People v Rodriguez*, 185 AD3d 1296 (3d Dept 2020)

47.  *People v Marcus*, 184 AD3d 1143 (4th Dept 2020), *lv denied* 35 NY3d 1068 (2020)

48.  *People v Anderson*, 184 AD3d 1020 (3d Dept 2020), *lv denied* 35 NY3d 1064 (2020)

49.  *People v Brito*, 184 AD3d 900 (3d Dept 2020)

50.  *People v Velez*, 184 AD3d 880 (2d Dept 2020)

51.  *People v Mungin*, 184 AD3d 877 (2d Dept 2020)

52.  *People v Morocho*, 184 AD3d 876 (2d Dept 2020), *lv denied* 35 NY3d 1096 (2020)

53.  *People v Dixon*, 184 AD3d 854 (2d Dept 2020), *lv denied* 35 NY3d 1065 (2020)

54.  *People v Leiva*, 184 AD3d 731 (2d Dept 2020), *lv denied* 35 NY3d 1067 (2020)

55.  *People v Simpson*, 184 AD3d 677 (2d Dept 2020), *lv denied* 35 NY3d 1070 (2020)

56. *People v Chy*, 184 AD3d 664 (2d Dept 2020)

57. *People v Christopher B.*, 184 AD3d 657 (2d Dept 2020), *lv denied* 35 NY3d 1065 (2020)

58. *People v Aquino*, 184 AD3d 656 (2d Dept 2020), *lv denied* 35 NY3d 1042 (2020)

59. *People v Dubose*, 184 AD3d 584 (2d Dept 2020)

60. *People v Youngs*, 183 AD3d 1228 (4th Dept 2020)

61. *People v Wilson*, 183 AD3d 922 (2d Dept 2020), *lv denied* 35 NY3d 1050 (2020)

62. *People v Dixon*, 183 AD3d 837 (2d Dept 2020), *lv denied* 35 NY3d 1065 (2020)

63. *People v Suarez-Montoya*, 183 AD3d 765 (2d Dept 2020)

64. *People v Contreras*, 183 AD3d 759 (2d Dept 2020), *lv denied* 35 NY3d 1026 (2020)

65. *People v Howard*, 183 AD3d 640 (2d Dept 2020), *lv denied* 35 NY3d 1113 (2020)

66. *People v Kang*, 183 AD3d 640 (2d Dept 2020), *lv denied* 35 NY3d 1067 (2020)

67. *People v Johnson*, 182 AD3d 1036 (4th Dept 2020), *lv denied* 35 NY3d 1046 (2020)

68. *People v White*, 182 AD3d 612 (2d Dept 2020), *lv denied* 35 NY3d 1116 (2020)

69. *People v Devallon*, 182 AD3d 608 (2d Dept 2020), *lv denied* 35 NY3d 1026 (2020)

70. *People v Weeks*, 182 AD3d 539 (2d Dept 2020)

71. *People v Cole*, 181 AD3d 1329 (4th Dept 2020)

72. *People v Crogan*, 181 AD3d 1212 (4th Dept 2020), *lv denied* 35 NY3d 1026 (2020)

73. *People v Byrd*, 181 AD3d 1183 (4th Dept 2020), *lv denied* 35 NY3d 1025 (2020)

74. *People v Martz*, 181 AD3d 979 (3d Dept 2020), *lv denied* 35 NY3d 1047 (2020)

75. *People v Tellado*, 181 AD3d 830 (2d Dept 2020)

76. *People v Rivera*, 181 AD3d 825 (2d Dept 2020)

77. *People v Paulin*, 181 AD3d 824 (2d Dept 2020), *lv denied* 35 NY3d 1047 (2020)

78. *People v Brown*, 181 AD3d 819 (2d Dept 2020)

79. *People v Tayeh*, 181 AD3d 726 (2d Dept 2020), *lv denied* 35 NY3d 1029 (2020)

80. *People v McDowell*, 181 AD3d 716 (2d Dept 2020), *lv denied* 35 NY3d 1096 (2020)

81. *People v Baptiste*, 181 AD3d 696 (2d Dept 2020), *lv denied* 35 NY3d 1092 (2020)

82. *People v Brown*, 180 AD3d 1341 (4th Dept 2020), *lv denied* 35 NY3d 968 (2020)

83. *People v Kyra J.*, 180 AD3d 929 (2d Dept 2020), *lv denied* 35 NY3d 971 (2020)

84. *People v Christie*, 180 AD3d 802 (2d Dept 2020), *lv denied* 35 NY3d 968 (2020)

85. *People v Berry*, 180 AD3d 801 (2d Dept 2020)

86. *People v Frias*, 180 AD3d 704 (2d Dept 2020), *lv denied* 35 NY3d 970 (2020)

87. *People v Stenson*, 179 AD3d 1449 (4th Dept 2020), *lv denied* 35 NY3d 974 (2020)

88. *People v Dozier*, 179 AD3d 1447 (4th Dept 2020), *lv denied* 35 NY3d 941 (2020)

89. *People v Barrales*, 179 AD3d 1313 (3d Dept 2020)

90. *People v Ortega-Flores*, — Misc 3d —, 2020 NY Slip Op 20124 (App Term, 2d Dept, 9th & 10th Jud Dists 2020), *lv denied* 35 NY3d 1096 (2020)

STEIN, J. (dissenting in *People v Daniels* and otherwise concurring):

I join the majority's memorandum decision reversing in the nine appeals before us other than *People v Daniels*. However, in *Daniels*, I am in agreement with Judge Garcia that the majority goes beyond what is required by *People v Thomas* (34 NY3d 545 [2019])

- 1 -

and effectively overrules our decision in *People v Ramos* (7 NY3d 373 [2006]).  Therefore,

I join Part IV of Judge Garcia's dissent.

For SSM No. 14: On review of submissions pursuant to section 500.11 of the Rules, order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the memorandum herein. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Wilson and Feinman concur. Judge Garcia concurs in result in an opinion.

For SSM No. 15: On review of submissions pursuant to section 500.11 of the Rules, order reversed and case remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with the memorandum herein. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Wilson and Feinman concur. Judge Garcia concurs in result in an opinion.

For SSM No. 16: On review of submissions pursuant to section 500.11 of the Rules, order reversed and case remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with the memorandum herein. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Wilson and Feinman concur. Judge Garcia concurs in result in an opinion.

For SSM No. 17: On review of submissions pursuant to section 500.11 of the Rules, order reversed and case remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with the memorandum herein. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Wilson and Feinman concur. Judge Garcia concurs in result in an opinion.

For SSM No. 18: On review of submissions pursuant to section 500.11 of the Rules, order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the memorandum herein. Chief Judge DiFiore and Judges Rivera, Fahey, Wilson and Feinman concur. Judge Garcia dissents and votes to affirm in an opinion, in which Judge Stein concurs in part in a separate dissenting opinion.

For SSM No. 19: On review of submissions pursuant to section 500.11 of the Rules, order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the memorandum herein. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Wilson and Feinman concur. Judge Garcia concurs in result in an opinion.

For SSM No. 20: On review of submissions pursuant to section 500.11 of the Rules, order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the memorandum herein. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Wilson and Feinman concur. Judge Garcia concurs in result in an opinion.

For SSM No. 21: On review of submissions pursuant to section 500.11 of the Rules, order reversed and case remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with the memorandum herein. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Wilson and Feinman concur. Judge Garcia concurs in result in an opinion.

For SSM No. 22: On review of submissions pursuant to section 500.11 of the Rules, order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the memorandum herein. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Wilson and Feinman concur. Judge Garcia concurs in result in an opinion.

For SSM No. 28:  On review of submissions pursuant to section 500.11 of the Rules, order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the memorandum herein. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Wilson and Feinman concur. Judge Garcia concurs in result in an opinion.

Decided December 15, 2020